# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHER DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| SIS PITTSBURGH LLC, | |
| Plaintiff, | Case No. 15 C 10971 |
| v. | |
| PACE SYSTEMS, INC., | Judge Harry D. Leinenweber |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

### I. BACKGROUND

In this lawsuit the Plaintiff, SIS Pittsburgh, LLC ("SIS"), seeks damages from Defendant, Pace Systems, Inc. ("Pace"), for breach of a Professional Services Agreement (the "Agreement") between the two. Pace has counterclaimed for breach of contract, complaining that SIS failed to provide the services for which it submitted invoices and is seeking payment. Pace seeks return of the money it paid under the contract as well as consequential damages for the cost of another consultant. The services to be provided under the Agreement were the installation and implementation of accounting software.

Paragraph 1 of the Agreement provides for the services to be performed as outlined in a separate document referred to as a "work order." The paragraph includes, in addition to the work

described in the work order, "any support services that may be provided with or without existing work order" and "any other reasonable services that the company asks consultant to perform and Consultant agrees to perform with or without a work order. Compensation was to be determined in accordance with an Exhibit A which was attached and incorporated into the Agreement by reference. With the exception of a $15,000.00 retainer, the services were to be billed on a time and material basis. The problem that gives rise to this lawsuit is Paragraph 3 "Billing Procedures."

This paragraph states as follows:

**3. Billing Procedures**.

(a) Consultant shall submit an invoice to the Company on a weekly basis following the complete execution of this Agreement detailing the professional fees and related expenses incurred during the previous week (in accordance with the rates set forth in Exhibit A). The Company agrees to pay Consultant the amount of the invoice within twenty (20) days of receipt of such invoice.

(b) In the event that Consultant initiates collection proceedings in connection with this Agreement and it is determined by a court or other like body of competent jurisdiction that the Company's failure to pay amounts sought by Consultant constitute a breach of this Agreement, Consultant shall be entitled to receive its reasonable costs (including attorneys' fees) incurred in connection with such proceeding.

(c) Customer shall have fifteen (15) days from the date of the invoice to dispute any invoiced item, provided said dispute is communicated to Consultant in writing, identifying the specific item being disputed,

and reasons for said dispute. Upon receipt of the notice of billing dispute by Consultant, both Consultant and Company shall attempt to resolve said dispute in good faith within 15 days of the date of the notice of billing dispute. In the event that an invoice presented to Company by Consultant is not disputed within the period of time specified in this paragraph, any and all items on the invoice shall be considered an undisputed and valid invoice for the services performed by the parties hereto.

The Agreement also provided that either party could cancel and terminate the Agreement upon delivery of ten days written notice.

The Agreement further provided that Georgia law would govern the interpretation of the Agreement.

SIS proceeded to perform services under the contract for which it periodically invoiced Pace. Pace, however, paid some invoices, partially paid some others, and did not pay anything on still others. The result is that there is a balance due SIS on the invoices in the amount of $85,244.46, plus interest and late fees, for which SIS is seeking in this suit. Pace admits that it did not follow the procedure in Paragraph 3 and did not provide a writing disputing any invoiced item within 15 days as required. Pace also admits that SIS performed the hours for which it invoiced Pace. Further, since there was no written dispute, there was no attempt to resolve any such dispute in good faith.

Pace, in its defense, points to the estimate contained in the work order which indicated that the total estimate of fees and expenses was $95,000, while the invoices sent to Pace totaled $175,141.03. Pace also argues that there was a great deal of e-mail exchanges which contained a list of issues that were cropping up and certain tasks that SIS needed to complete. Pace further contends that it had to retain another consultant to complete the work.

## II. DISCUSSION

### A. Count I – Account Stated

Both parties cite *Eastview Healthcare, LLC v. Synertx, Inc.*, 296 Ga. App. 393 (2009) in support of their positions. In this case, Synertx had a written agreement to provide a variety of therapists at the facilities operated by Eastview and its affiliates "on an as-needed basis or as otherwise requested by the [facilities]." In exchange Eastview agreed to pay Synertx's monthly invoices. Further the contracts stated that "[if the] facility has any question or issue regarding any invoice from [Synertx, the] facility shall so notify [Synertx] in writing within fourteen (14) days of receiving the invoice, or such invoice shall be deemed accurate and complete in all regards. [The] facility shall pay [Synertx's] invoices within thirty (30) days of the end of each month of service."

The president of Synertx provided an affidavit that Synertx sent each of the facilities monthly invoices for services provided as well as statements of outstanding balances. He further averred that Synertx provided all of the services listed on the invoices and never received any written notice or objection from the facilities to any of the invoices or statements. The record further showed that the facilities failed to pay the full balance due on the invoices, or made late payments on some of them. The facilities majority owner admitted that they had received the invoices and had not disputed the amount of the invoices or questioned whether the therapists had actually provided the services. Instead the facilities argued that Synertx should be estopped from enforcing the contract because Synertx had materially breached the agreement by failing to provide sufficient number of therapists to meet the facilities' needs. The court proceeded to grant Synertx summary judgment on the amount of unpaid invoices because the facilities had failed to provide a triable issue of fact as to the inaccuracy of any of the billings. The Georgia Court also relied upon *Lipton v. Warner & Bates,* 228 Ga. App. 516 (1998), in which a law firm provided legal services to the defendant for which it billed but was not paid. The defendant provided an affidavit in opposition to summary judgment in which it sought to dispute the services rendered. The Georgia Court

found for the plaintiff on the basis that the defendant had accepted the services without disputing the bills.

These cases provide ample authority to support summary judgment in favor of SIS on Count I. Here SIS provided computer consulting services in an attempt to install and implement an accounting software program. It is clear from the e-mail strings provided that the installation and implementation did not go smoothly. There is no evidence, however, in any of the e-mail strings to support an argument that SIS was not proceeding in good faith to provide professional services agreed upon. Further, Pace did not take advantage of the contractual provision allowing it to dispute any of the services provided. The obvious purpose of the notice provision was to avoid disputes such as this one growing into an expensive lawsuit. A party cannot sit back, accept services, and decide not to pay for them after the fact. The case for an account stated is especially strong where the contract requires written notice of any dispute to be made on a timely basis (*Synertx*). Even without such a notice requirement Georgia law requires a timely dispute to be made. One cannot accept services, receive bills, and not pay. (*Lipton*). If Pace was so dissatisfied with the services provided by SIS, it could have disputed the invoices and cancelled the Agreement.

Pace argues that SIS did not always bill on a monthly basis as the contract required. However, Pace does not explain how the failure to bill on a monthly basis is material to the dispute. The explanation given by SIS was that SIS did not bill where the amount of work for the specific period was small. Pace does not argue that delay in billing, for example, allowed the balance due to increase to an unexpected large amount that created a cash flow problem for Pace. *See, Burnham v. Cooney,* 593 S.E. 2d 701, 704-05 (Ga. App, 2004) (Attorney's failure to bill allowed the fees to escalate, even after being told to cease working on the case because of the fact that the party being sued had become judgment proof). Here Pace was well aware of the accumulation of fees due but did nothing about it other than to make partial payments or ignore the invoices all together. The law is clear in Georgia that if you ignore invoices that describe the services billed you concede the accuracy of the invoices and thereby create an account stated.

Pace makes several other arguments which need not detain us long. It argues that some of the invoices contained the name of a person to contact in case of dispute while others did not. Pace did not, however, make any attempt to contact the person named. Nor does this detract from the clear language of the Agreement that requires timely written disputes. Pace further argues that it could not have been expected to be able to

dispute invoices because of the short period of time afforded by the agreement, fifteen days. This argument might have had a better chance of success had Pace actually attempted to dispute some of the invoices in writing after 15 days. Certainly, since Pace here is relying on the e-mail strings as proxies for written disputes, if the "complaints" were true complaints as to quality or quantity of work, Pace could have easily filed written complaints as to the specific invoices as required by the Agreement even if the complaints were late. They did not do so. It also can be noted that Pace paid approximately $89,000.00 on the invoices over the course of the work that concluded on June 10, 2013, after Pace denied access to SIS effectively cancelling the contract.

Pace also argues that under Georgia law where the plaintiff is seeking to recover on an open account and the amount is disputed, the parties cannot proceed with the action on an open account, but instead proceed under breach of contract. *American Teleconferencing Services v. Network Billing Systems, LLC,* 668 S.E.2d 259, 263 (Ga. App. 2008). However, the case of *Imex International, Inc. v. Wires Engineering,* 261 Ga. App. 329, 332 (2003), a case cited by the *American* Teleconferencing court, states that a buyer must make "a seasonable objection" to the invoice or subject itself to "admission by silence," thus creating an action on an open account.

Accordingly, the Court grants summary judgment on Count I. Judgment is entered in the amount of $85,244.46 plus costs. Having granted summary judgment on Count I, Count II, Breach of Contract, and Count III, Unjust Enrichment, are dismissed.

### B. Pace's Counterclaim

SIS has moved for summary judgment on Pace's Counterclaim in which it contends that SIS did not perform its services "completely and correctly." It relies on *Eastview HealthCare,* 674 S.E. 2d at 646, a case which the court discussed above. In that case, while the court granted summary judgment on the unpaid invoice amounts based on account stated, it denied summary judgment to Synertx on the facilities' counterclaim for lost profits due to understaffing. The Georgia court held that if there is evidence by which a jury could find breach of contract then summary judgment is to be denied. Here Pace argues that it has submitted some evidence that SIS did not provide complete services so that the software was installed and implemented without Pace hiring a replacement consultant. SIS responds arguing that a provision of the parties' Agreement, whereby Pace agreed to hold SIS harmless from "any claims or causes of action brought against [SIS] by any party as a result of [SIS'] performance," applies to prevent Pace from suing it based on its performance. While the language cited could be read, as SIS does, to prevent a counterclaim, the language can

also can be read to apply only to those claims made by a third party arising out of SIS' performance. It would be unusual for a party to enter into an agreement that prevents it from suing for breach of contract. SIS' interpretation would require Pace to hold itself harmless from itself. At the very least this constitutes an ambiguity. Thus, summary judgment is not proper. Accordingly, the Motion for Summary Judgment on Pace's Counterclaim is denied.

### C. Attorney's fees

SIS has requested attorney's fees for prosecuting this case and defending Pace's Counterclaim. Pace has objected based on the failure of SIS' counsel to itemize the fee request. SIS filed a detailed fee request as an exhibit to its Reply Brief. Pace objects on the grounds that it is too late to supply such material at the reply stage. Pace is correct. However this dispute is irrelevant at this stage because the Court has denied summary judgment on the Counterclaims so that the fee request will need to be modified which will allow Pace time to review the fee request. Therefore, the Motion to Strike the fee request is denied without prejudice.

### III. CONCLUSION

For the reasons stated herein, Plaintiff's Motion for Summary Judgment [ECF. No. 19] is granted, and judgment is entered in the amount of $85,244.46 plus costs, but without

attorney's fees.  Plaintiff's Motion for Summary Judgment on Defendant's Counterclaim is denied.  Defendant's Motion to Strike the fee request is denied without prejudice.

**IT IS SO ORDERED.**

                                      Harry D. Leinenweber, Judge
                                      United States District Court

Dated: August 22, 2016